We'll now move to the final case on our argument calendar and the final case for the week, Hollister versus BOBS. And counsel, whenever you're ready. Thank you, your honor. Did I successfully unmute myself? Yes. Okay, good. It's always a good place to start making sure I can be heard. I will say that I've had a little bit of problems with the audio. So there may be some times when I'm not able to hear and I'll try to let members of the court know that. I don't know why it happened. But I, there have been periods during the arguments when I have just not been able to hear the parties. So I'll try to keep the court informed about that. With that, good afternoon, and may it please the court. My name is David Tillum, and I represent the appellant Dana Hollister. I'd like to begin with a correction, small correction to appellants opening brief, and an update on the status of the case. In the opening brief, which is docket six at page 23, I cited to a case entitled boulders on the river 164 BR 99. We don't have line numbers in the briefs, but it's it's on page 23. And in that citation, I referenced page 105. But the reference should have been to page 104. In the same citation, the parenthetical appears as a quotation. It's actually a paraphrase and the quotation mark should be disregarded. I did not quote from the opinion. It was a paraphrase. With respect to the update. This court recently inquired about Bob's ago, that motion has since been denied, and is the subject of an appeal now pending before the bankruptcy appellate panel as case number CC dash 21 dash 1237. So I wanted to make those two points. Next, I wanted to turn to the issue of recusal, because I thought that was a bit unfocused in my briefs. In preparing for this argument, and I apologize, there we go. In preparing for this argument, I came to the conclusion that the opinion on the standard of review, the appropriate standard of review, suggested by counsel for SPS, the senior lien holder, is the correct standard, and that is the abuse of discretion standard. But I nonetheless believe that the abuse of discretion standard has been satisfied in this case. The argument for recusal is twofold. The first argument appears in the opening brief at pages 33 and 34, and in the reply brief at page 11. Appellant relies on this court's decision and the reasoning, and I may mispronounce it, finance, which is 781 Fed Second 1370 from 1986. In this case, the bankruptcy court has repeatedly crossed the line between its administrative function and its judicial function, substituting its business judgment for that of the party to whom Congress assigned the role of man. So I'd like to make sure we have sufficient time here to talk about the issue of whether this appeal is moot. There are two parts, and one is the substantive or related to the substantive decision on the motion. And as far as I can tell, there is nothing in the record to suggest that or to say that the priming loan is still available. And as to the evidentiary hearing, there was an evidentiary hearing, I believe, in August. So the issue of whether the right standard was applied with regard to the priming loan application or not, how isn't that moot, given that the priming loan has expired? And although your client says something's available, there's no, as far as I can tell, no evidence of that. So why aren't these issues moot? Your Honor, with respect to the mootness of the priming loan, I attempted to include that in the supplemental argument that the court invited, but I was told that I couldn't include new evidence. So the best I could do was make representations to the court that there are loans that are available of exactly that same type. Well, I mean, that's what you put in there. I don't know who told you what you could include or what you couldn't include. But we have nothing before us that says this loan, as opposed to some other loan, is available. And I assume there's nothing in the bankruptcy court record that says this particular loan is still open and available, right? No, Your Honor. Respectfully, this loan is available. Is there, that wasn't exactly my question. My question is, is there anything, there isn't anything in our record, is there anything in the bankruptcy court record, even if it's like yesterday, where somebody has put in a declaration that says this particular priming loan, with the terms that were proposed, that the bankruptcy court conducted a hearing on, even though it that loan is still available because the expiration has been extended or here are the facts. Is there anything in the bankruptcy court that says, in the form of evidence, that the bank, that that priming loan is still available? Well, no, there would have been no opportunity to do that. And so it wasn't done. The issue with respect to this loan was completed. And upon the notice of appeal being filed, there was nothing left to discuss about that issue. And so there was no opportunity to do that. Although, had we had an opportunity, and again, I intended to do that in the supplemental brief. And I got a letter from the clerk's office that said, no, you can't include a declaration. And so the best I could do was simply include the representation in the supplemental brief that the loan is indeed still available because the person who was arranging the loan still has funding and is still prepared to make the loan. That's the best I can offer. I didn't have another opportunity. Now, with respect to the second part of the court's question and the hearing in August, it was a different issue. The hearing in August was a relief from stay hearing based on Section 362 of the Bankruptcy Code and not a hearing on Section 364 of the Bankruptcy Code. In Section 362, the Bankruptcy Court utilized the interpretation of Section 361 that I urge should have been used in this Section 364 case. That's what the Bankruptcy Court did. Going back to the priming loan, so you are representing to us that if we were to say the rule in your favor that going back to the, unless something changes between now and when it got back to the Bankruptcy Court, you would be filing something in the Bankruptcy Court that specifically said this priming loan with the exact same terms, except we're now six months later, is still available and District Court, we want you to approve this same priming loan that you didn't approve six or seven months ago. That's what you'd be doing in the Bankruptcy Court, and that's your representation to us? Yes, Your Honor. As of the date that I filed the supplemental brief, which was October 18th, so that was one month ago today. That was the last time I conferred with my client on the subject, and as of October 18th, the answer is absolutely yes. I can't say what might have happened in the intervening months. Okay, certainly. Let's move a little bit then to the merits. We'll move past the mootness. So, I'm having trouble with your argument that adequate protection in the statute doesn't equal indubitable equivalent, and that we should interpret indubitable equivalent in one statute the same as interpreting indubitable equivalent in another statute. What am I missing here? Respectfully, Your Honor, what I think you're missing is that the Circuit has already issued decisions that interpret the phrase indubitable equivalent under Section 361 differently from the interpretation that appears in Section 1129. And is this your argument that you believe our case law, sort of as a matter of law, established that a certain percentage of an equity cushion in every case equals indubitable equivalent, or is it something else? No, no. That is a benchmark or a starting point for the analysis. I agree that it's not axiomatic or necessary, but it is a starting point for the analysis that in Meller, the court said, I can't remember if it was 10% or 20%, but again, there are circumstances where that might necessarily have to be more. But in this case, I think we have overwhelming evidence, if we had been permitted to introduce it, that shows that the equity cushion was significantly greater than even the 20% cushion. When you say our cases have established a different standard, what is the different standard that you say is there other than indubitable equivalent in the other statute? Well, it's precisely the indubitable equivalent issue in the, in Section 11, I'm sorry. No, no. I was just going to say, so what is the different standard? So in, according to the court's opinion under Section 1129, it is the, I have to find the precise language in the brief, but it is that argument or that language that says you have to find that there's absolutely no harm or no difference. And that the creditor is not offended at all that they're getting exactly the same treatment. So let me hypothetically accept that. How are the creditors here? How is Bob's getting exactly the same treatment when it goes from the priority it had to a significantly lower priority and there's money being dispersed to others, but not it. So how, how is it indisputably not being harmed and having the right kind of a treatment when it's moving down and money is going to others, but not it. Doesn't that depend on how much the property is worth? Well, there are several answers to that. First of all, certainly it depends on the value of the property. Even more than that, you have pinpointed the exact difference that exists between interpreting that phrase under 1129 and interpreting that phrase under 361. There are reasons why it should be interpreted differently under 361. Under 360, and I gave them, I recited them or described them in the brief. There are significant differences in how this phrase should be interpreted that, that promote the purposes of the statute. You can't have reorganization at well. And one other point in terms of the priority level, that's precisely what the statute says in its terms. The statute specifically permits subordination of a lien in favor of a new lien. That's why it's called a priming lien. Right. But, but you, you need to put them however you phrase it in the same position they were pre-priming loan, right? Well, yes, but that's why you have the requirement of adequate protection and adequate protection requires in turn that you find the indubitable equivalent and under the existing Ninth Circuit authority, indubitable equivalent can be satisfied among other things by finding an equity cushion. And the, the, the equity cushion calculation that, um, uh, you submitted to the bankruptcy court, uh, didn't seem to meet a jibe with the way people traditionally calculate equity cushion doing, doing the math. So, uh, the, the district, the district court seemed to give, to give your client much, the benefit of doubt and starting in the high forties. Your honor. I, I guess I'm not following that. First of all, the court didn't start in the high forties. It started at 40, which is a big difference. There's a difference between 48 and 40. And that's part of the problem with the bankruptcy court's analysis is that they started from the wrong place. Uh, and the second issue, uh, is that, uh, I, I went through the analysis and I did the math actually in the opening brief in this appeal where I went through and literally just outlined what adequate protection means. Adequate protection refers to the equity behind the lien that's in question, not the equity in the property itself. And that's the Miller decision. So I, I, I, I, if I misspoke or, or miscalculated in the, in the, before the bankruptcy judge, I would be surprised because it's a pretty fundamental principle of bankruptcy law, but I suppose I may have made a mistake, but I certainly corrected it in the appellate brief because I laid out the math in the appellate brief itself. All right. We'll, we'll give you, if you want to reserve your, your last 30 seconds, we'll give you some extra time on rebuttal. Thank you. I'd like to do that. All right. And my understanding is the appellees are splitting their time. Is that correct? That is correct. Your honor. All right. So my understanding is that Mr. Resnick is going to take a 10 minutes and Mr. Daly is going to take five minutes going second. Is that correct? Mr. Resnick, you should keep track of your own time there because if you, if you go over the will be to Mr. Daly. So when, whenever you're, whenever you're ready. Matthew Resnick appearing on behalf of Bob's LLC. Your honor, we believe that the adequate protection for equity cushion is not the exclusive method for providing adequate protection. In fact, the Mariner case in which the debtor cites many times in their motion specifically says that it says that, that the equity cushion in and of itself and adequate protection in and of itself is not exclusive. And neither of the, neither of the statutes apparently by design or, or, or definition prescribe precisely what that is to be adequately protected. The biggest concern here is that we're enforcement issue, which is what happened in both the Mariner case and in the Malar case in which those were motion for release. Those were temporary. Here we're asking for a permanent subordination, a permanent affectation of the rights. And when you look at the Mariner decision and you look at the statute behind the Mariner decision, which goes back to the Murrell decision back in the 1930s, where judge learned hand had stated that in order to compromise, you must advance the most indubitable equivalent. And how did the Mariner court look at that? The Mariner court specifically said that must compensate for present value. Fine. That's the equity cushion. Let's just say that the equity is there, but more importantly, what happens in the future, which is the ensure the safety of the principle. After all, there are constitutional safeguards for the lender. Once they have the benefit of the bargain of negotiating with the borrower. Now, when you look at in depth in doodle equivalent, I apologize, you know, that the common definition is that is something that is supposedly undoubtedly equal in value to what was taken away. And judge Basin, the bankruptcy trial court judge, he had decided that there wasn't enough there. There wasn't enough adequate protection, maybe outside of the equity cushion and gave a mathematical formula, but certainly not to ensure the preservation of the principle. Judge Bennett, you're absolutely correct. We are, we are being asked to unwillingly subordinate our position. And by subordinating our position, we are clearly affected by this motion. But I think I think your friend makes a good point that the statutes contemplate circumstances in which you'll be in a worse position. And to put you in a worse position, you need to get the indubitable equivalent. So I mean, worse position lean, lean priority wise. So it can't mean indubitable equivalent can't mean that you can't move down the list, right? No, but the case law definitely says it has to be the indubitable equivalent has to be too evident to be doubted. You're fundamentally changing the character of the secured position versus the Malora decision or a cash collateral under 363 or a motion for relief under 362, which is just to compensate for delay. That's all you're asking for under 362. So you couldn't, the equity cushion, of course, will compensate for that delay. However, the secured position in the property being laddered down, well, absent any, you know, they used to call it dirt for dirt, right? That's what the Arnold decision said, the dirt for dirt plan. There's no dirt here. There's just Hey, look at we have this mythical equity. Lord knows that trees grow in the sky forever. And once the trees grow in the sky forever, your clients can be adequately protected. I don't think that's what Congress intended. When they were looking at the indubitable equivalent, especially as it manifested itself from the mural decision. What do we do with the fact that the court could not determine a value for this property? I don't think that they wanted to determine the value at that point for two purposes. One is that there was no, the burden was on the debtor. As you know, or the section is a permissive section, they may, the court may allow for this. And so once they found that there was no value, wasn't any reliance on the insured safety of the principal, I don't believe they needed to get to that, the actual appraised amount. And the second point is that this all came out, this great financing came out to save the debtor from what, from the settlement agreement that the debtor had negotiated. The debtor had to know that there would be consequences a couple of years down the line if they couldn't get the financing. Now they're trying to circumvent that settlement agreement by disproportionately dropping our position as a secured creditor in the bankruptcy. We believe that is fundamentally unfair and that the court had decided accurately by weighing the balances of the interest. In addition, the settlement agreement does have a sale component, and that sale component is being done right now. It's being marketed. So the court was very sensitive to the fact that any appraised value that they give, that they offer, that appraised value would be used towards negotiating with the marketing themselves of the property today. And so what, what is, what is the, I'm sorry, did I interrupt your judgment? I apologize. I was just going to follow up on what Sreznic just said and just ask him what, at what value is it being marketed? Your Honor, I don't know exactly, but I do know the price was reduced. Maybe Mr. Daly or Mr. Tillum knows, but I know it's below $30 million. So counsel, what, what relevance in the, in your view is the, the declaration of Ms. Hollister that she'd spent three years trying to find a loan with many different brokers. And after all of that effort, which most of which didn't come to fruition and were unsuccessful, this was the, the only loan that she found and the, the lender would only take a first position. Yeah, that's a, it's a compromised position that most debtors, debtors have to loan to someone in concerns that the court had just now, which is what's the value. And it's nice to get an appraiser to determine what the value is. But when the court looked at all of the, the parallels of refinancing other clients in the past or obtaining financing for other clients in the past, they couldn't determine that this, with all the evidence that was provided, that, that she did exhaust all her remedies, that she did exhaust all her attempts to get refinancing. And the court doesn't have a bunch of decline. There's no evidence of the declines of the failure to get the financing. There's just evidence of this declaration saying for three years, I've attempted to, and unfortunately I have not been able to get it. This is the best that I got. Why don't all of these unknowns, unanswered questions, contingencies, militate in, in favor of the bankruptcy court having conducted an evidentiary hearing. And in, in your discussion of that, why don't you also tell me if you disagree with your friend that the evidentiary hearing was on a totally different subject. And so that issue isn't moved. You know, I don't disagree. I think all, all legal scholars would agree that a sale is the estimate of a fair market value. And the court did not want to chill that fair market value process while it's being marketed. So the fact that they didn't have an appraisal during the period of time or didn't come to a final number, I think was balancing the interest, not only balancing the interest of the debtor, but also balancing the interest of the estate and the other creditors of the estate. Do you agree that the evidentiary hearing issue is not moot? I believe that it is moot. We provided that in the, in our papers and our reply, mainly because we haven't seen any evidence of an additional collateral. And more importantly, the court didn't necessarily find a value. Again, the court has been sensitive to the property. So they didn't assign a value. In fact, not only did they not assign a value, they required as part of our adequate protection, an actual carve out of our secured lien, meaning there probably isn't enough equity to incentivize the agent to continue their marketing efforts. And as a result of that, the only adequate protection that they would allow for us is if we accepted the carve out, we did not accept the carve out. And that is the issue that is being appealed right now. It is five minutes, Your Honor, before I, Okay. If none of my colleagues have any more questions for you, we will move to Mr. Daly. Thank you so much, Your Honors. A couple of initial comments on the issue of mootness is even if that $7 million priming loan is still available, the facts have changed. And because what the amounts that the priming loan was supposed to be used for, many of those have Bob's, I'm sorry, page eight of Bob's opening brief. Bob sets forth a matrix of what that $7 million was supposed to be used for. And many of these have gone up. So like senior lien holder would get $400,000. Well, the total payoff amount, because SPS is advanced property taxes and I'm lien is larger. The church birds that that was supposed to be entirely paid off is certainly larger. Deanne stats position is also larger. So that $7 million would have to be divided up some other way that's not that's not before the court right now. That other although, if that if that's your argument as to mootness, it would strike me that the the legal issues in your view, because these things are always going to change over time, are capable of repetition, but would be evading review because the appeal time would always change the numbers. I suppose that that might be correct. But as Bob's indicates in their opening brief, there's a question about whether or not this order is even appealable, because it's not a final final determination on on the merit she could do was it was it was it certified? Yeah, but she could go get a seven, some other loan and bring the same kind of motion motion tomorrow. It's not a final determination on whether or not she can ever get a priming loan. Maybe true, but this this question was certified. Oh, that that's, that's true. And then the other thing with respect to mootness is the debtor received a full evidentiary hearing on the on the motion for good motion for relief from automatic stay. And in that the court was willing said that Bob's wasn't adequate adequately protected even without a priming loan. So if Bob's isn't adequately protected without a priming loan, how would it ever be adequately protected with a priming loan? And then with respect to the issue about whether or not a hearing should have been granted. I focus on the indubitable part of indubitable equivalent found under 11 USC 364. And it maybe doesn't mean too certain, or with forget the phrase too evident to be doubted. But it certainly means something it either means that or it means inarguable and contestable and controvertible. It means very certain. And this property is very unique, such it's not a property and attract development. It's big, but it's very old. And it's not on the west side of Los Angeles. So there's literally are no comparables that go along with that. And I think that's shown by the fact that the realtor first the realtor listed at 39 million, then the realtor dropped it down to 29 million. That's a big swing. And when I was attending some of the appraisers depositions, one of the appraisers said, the only thing that will determine the market value of this property that a curator would want to purchase somebody that just has some particular affection to this very old property located in Silver Lake. And unlike similar high value properties on the west side where they're all are comparables. There's really nothing like this in Silver Lake. So I think the court focusing on too evident to be doubted, how would you ever put a market value on a property that's just so unique using appraisals, appraisals or comps or anything like that. And I think that's all I have, unless the court has any questions. Mr. Tillum, why don't we give you two minutes. Thank you very much, Your Honor. Mr. Resnick is correct. This is an equity cushion is not the exclusive means of adequate protection, but it is a means of adequate protection. And that is what the debtor was relying on this in this case, the future consequences issue. With all due respect, that's not in the statute. The future consequences of what might happen after this motion is granted or denied is something that can be addressed under a subsequent relief from stay motion. It's not addressed in the connection with this sort of a financing motion under Section 364. It is an element under Section 362. The argument that was made by Mr. Resnick again, Section 361, it's the same words, the same language and the same phrase supposed to be applied in connection with relief from stay, cash collateral and financing motions. You can't have a well, maybe you can, but I would argue that it would not be appropriate to have the same phrase in the same statute, which is a sort of a helping verb or a helping statute, have different meetings depending on whether it applies to 362, 363 or 364. 361 says very plainly it applies to all of them. Now, Mr. Resnick is also correct in saying that the debtor could and should have contemplated the consequences of not finding financing sooner. But I would respectfully submit that and remind the court the debtor is in the hospitality business. And I don't think anybody anticipated the impact of COVID on the hospitality business. And that deprived her of a period of about a year to go and find replacement financing. We tried to make that argument to the bankruptcy judge and the bankruptcy judge turned a deaf ear to it. He said, you had two years, I don't really care about the COVID, but it shut down the debtor's business and of course it ruined the debtor's cash flow. Now, another argument or comment that was made is that the property is now being marketed for around $30 million. That's actually incorrect. The property that is being marketed is not the entirety of the property. There are, I believe, four different parcels. And the property that is listed and being marketed currently at $29, but was $39 is only two of the four parcels. I believe that's correct. I know that it's not all four. And in terms of having... Why don't you conclude, Mr. Tillum? Your Honor, I think that I've made all of the points that I can in the briefs and I appreciate the time that the panel has allowed to me. Thank you very much. All right. We thank counsel for their arguments and the case just argued will be submitted. With that, we are concluded with our argument calendar for the day and the hearing is adjourned. This court for this session stands adjourned. Thank you so much, judges. I'm moving you into the roving room now. All right. Shall we take a five-minute break? Good idea. Thank you. I apologize. There we go. In preparing for this argument, I came to the conclusion that the opinion on the standard of review, the appropriate standard of review suggested by counsel for SPS, the senior lien holder, is the correct standard and that is the abuse of discretion standard. But I nonetheless believe that the abuse of discretion standard has been satisfied in this twofold. The first argument appears in the opening brief at pages 33 and 34 and in the reply brief at page 11. Appellant relies on this court's decision and the reasoning in, and I may mispronounce it, Manoa Finance, which is 781 Fed Second 1370 from 1986. In this case, the bankruptcy court has repeatedly crossed the line between its administrative function and its judicial function, substituting its business judgment for that of the party to whom Congress assigned the role of managing. I'd like to make sure we have sufficient time here to talk about the issue of whether this appeal is moot. There are two parts. And one is the substantive or related to the substantive decision on the motion. And as far as I can tell, there is nothing in the record to suggest that or to say that the priming loan is still available. And as to the evidentiary hearing, there was an evidentiary hearing, I believe, in August. So the issue of whether the right standard was applied with regard to priming loan application or not, how isn't that moot given that the priming loan has expired? And although your client says something's available, there's no, as far as I can tell, no evidence of that. So why aren't these issues moot? Your Honor, with respect to the mootness of the priming loan, I attempted to include that in the supplemental argument that the court invited, but I was told that I couldn't include new evidence. So the best I could do was make representations to the court that there are loans that are available of exactly that same type. Well, I mean, that's what you put in there. I don't know who told you what you could include or what you couldn't include. But we have nothing before us that says this loan, as opposed to some other loan, is available. And I assume there's nothing in the bankruptcy court record that says this particular loan is still open and available, right? No, Your Honor. Respectfully, this loan is available. That wasn't exactly my question. My question is, is there anything, there isn't anything in our record, is there anything in the bankruptcy court record, even if it's like yesterday, where somebody has put in a declaration that says this particular priming loan, with the terms that were proposed, that the bankruptcy court conducted a hearing on, even though it expired whenever it was, March 31st, 2021, that loan is still available because the expiration has been extended or here are the facts. Is there anything in the bankruptcy court that says in the form of evidence that that priming loan is still available? Well, no, there would have been no opportunity to do that. And so it wasn't done. The issue with respect to this loan was completed and upon the notice of appeal being filed, there was nothing left to discuss about that issue. And so there was no opportunity to do that, although had we had an opportunity. And again, I intended to do that in the supplemental brief. And I got a letter from the clerk's office that said, no, you can't include a declaration. And so the best I could do was simply include the representation in the supplemental brief that the loan is indeed still available because the person who was arranging the loan still has funding and is still prepared to make the loan. That's the best I can offer. I didn't have another opportunity. Now, with respect to the second part of the court's question and the hearing in August, it was a different issue. The hearing in August was a relief from stay hearing based on Section 362 of the Bankruptcy Code and not a hearing on Section 364 of the Bankruptcy Code. But that's precisely the basis of my argument. In the argument under Section 362, the bankruptcy court utilized the interpretation of Section 361 that I urge should have been used in this Section 364 case. That's what the bankruptcy court did. So going back to the priming loan, so you are representing to us that if we were to say the case isn't moved and rule on the substance of the priming loan, this is just a hypothetical question, and rule in your favor that going back to the, unless something changes between now and when it got back to the bankruptcy court, you would be filing something in the bankruptcy court that specifically said this priming loan with the exact same terms, except we're now six months later, is still available. And district we want you to approve this same priming loan that you didn't approve six or seven months ago. That's what you'd be doing in the bankruptcy court. And that's your representation to us. Yes, your honor. As of the date that I filed the supplemental brief, which was October 18th. So that was one month ago today. That was the last time I conferred with my client on the subject. And as of October 18th, the answer is absolutely yes. I can't say what might have happened in the intervening months. Let's move a little bit then to the merits. We'll move past the mootness. So I'm having trouble with your argument that adequate protection in the statute doesn't equal indubitable equivalent, and that we should interpret indubitable equivalent in one statute, the same as interpreting indubitable equivalent in another statute. What am I missing here? Respectfully, your honor, what I think you're missing is that the circuit has already issued decisions that interpret the phrase indubitable equivalent under section 361 differently from the interpretation that appears in section 1129. And is this is this your argument that you believe our case law as a sort of as a matter of law established that a certain percentage of an equity cushion in every case equals indubitable equivalent or is it something else? No, no, that is a benchmark or a starting point for the analysis. I agree that it's not axiomatic or necessary, but it is a starting point for the analysis that in Meller, the court said, I can't remember if it was 10 percent or 20 percent. But again, there are circumstances where that might necessarily have to be more. But in this case, I think we have overwhelming evidence, if we had been permitted to introduce it, that shows that the equity cushion was significantly greater than even the 20 percent cushion. When you say our cases have established a different standard, what is the different standard that you say is there other than indubitable equivalent in the other statute? Well, it's precisely the indubitable equivalent issue in the in section 11. I'm sorry. No, no. I was just going to say, so what is the different standard? So in in according to the court's opinion under section 1129, it is the the. I have to find the precise language in the brief, but it is that that argument or that language that says you have to find that there's absolutely no harm or no no difference and that the the creditor is not offended at all, that they're getting exactly the same treatment. So so let me hypothetically accept that. How are the creditors here? How is getting exactly the same treatment when it goes from the priority it had to a significantly lower priority and there's money being dispersed to others, but not it? So how how is it indisputably not being being harmed and having the the the right kind of a treatment when it's moving down and money is going to others but not it? Doesn't that depend on how much the property is worth? Well, there are several answers to that. First of all, certainly it depends on the value of the property. But even more than that, you have pinpointed the exact difference that exists between interpreting that phrase under 1129 and interpreting that phrase under 361. There are I recited them or described them in the brief. There are significant differences in how this phrase should be interpreted that that promote the purposes of the statute. You can't have reorganization. Well, and one other point, in terms of the priority level, that's precisely what the statute says in its terms. If the statute specifically permits subordination of a lien in favor of a new lien, that's why it's called a priming lien. Right, but but you you need to put them however you phrase it in the same position they were pre priming loan, right? Well, yes, but that's why you have the requirement of adequate protection. And adequate protection requires in turn that you find the indubitable equivalent. And under the existing Ninth Circuit authority, indubitable equivalent can be satisfied, among other things by finding an equity cushion. And the the equity cushion calculation that you submitted to the bankruptcy court didn't seem to meet a job with the way people traditionally calculate equity cushion doing the math. So the district the district court seemed to give to give your client much the benefit of the doubt in starting in the high 40s. Your Honor, I guess I'm not following that. First of all, the court didn't start in the high 40s. It started at 40, which is a big difference. There's a difference between 48 and 40. And that's part of the problem with the bankruptcy court's analysis is that they started from the wrong place. And the second issue is that I went through the analysis and I did the math actually in the opening brief in this appeal where I went through and literally just outlined what adequate protection means. Adequate protection refers to the equity behind the lien that's in question, not the equity in the property itself. And that's the misspoke or miscalculated in the in the before the bankruptcy judge. I would be surprised because it's a it's a pretty fundamental principle of bankruptcy law. But I suppose I may have made a mistake, but I certainly corrected it in the appellate brief because I laid out the math in the appellate brief itself. All right, well, we'll give you if you want to reserve your your last 30 seconds, we'll give you some extra time on rebuttal. Thank you. I'd like to do that. All right. And my understanding is the appellees are splitting their time. Is that correct? That is correct, your honor. All right. So my understanding is that Mr. Resnick is going to take 10 minutes and Mr. Daly is going to take five minutes going second. Is that correct? Mr. Resnick, you should keep track of your own time there. Because if you if you go over, the cost will be to Mr. Daly. So when whenever you're whenever you're ready. Matthew Resnick appearing on behalf of Bob's LLC, your honor. We believe that the adequate protection for equity cushion is not the exclusive method for providing adequate protection. In fact, the Mariner case in which the debtor cites many times in their motion specifically says that says that that the equity cushion in and of itself and adequate protection in and of itself is not exclusive. And neither the neither the statutes apparently by design or definition prescribe precisely what that is to be adequately protected. The biggest concern here is that we're trying to which is what happened in both the Mariner case and in the Malar case in which those were motion for release. Those were temporary. Here we're asking for a permanent subordination, a permanent affectation of the rights. And when you look at the Mariner decision, and you look at the statute behind the Mariner decision, which goes back to the Murrell decision back in the 1930s, where Judge Learned Hand had stated that in order to compromise, you must advance the most indubitable equivalent. And how did the Mariner court look at that? The Mariner court specifically said that must compensate for present value. Fine. That's the equity cushion. Let's just say that the equity is there. But more importantly, what happens in the future, which is the ensure the safety of the principal. After all, there are constitutional safeguards for the lender once they have the bargain of negotiating with the borrower. Now, when you look at indubitable equivalent, I apologize, you know that the common definition is that is something that is supposedly undoubtedly equal in value to what was taken away. And Judge Basin, the bankruptcy trial court judge, he had decided that there wasn't enough there, there wasn't enough adequate protection, maybe outside of the equity cushion and gave a mathematical formula, but certainly not to ensure the preservation of the principal. Judge Bennett, you're absolutely correct. We are we are being asked to unwillingly subordinate our position. And by subordinating our position, we are clearly affected by this motion. But but I think I think your friend makes a good point that the statutes contemplate circumstances in which you'll be in a worse position. And to put you in a worse position, you need to get the indubitable equivalent. So I mean, worst position lean, lean priority wise. So it can't mean indubitable equivalent can't mean that you can't move down the list, right? No, but the case law definitely says it has to be the indubitable equivalent has to be too evident to be doubted. You're fundamentally changing the character of the position versus the the Malora decision or cash collateral under 363, or a motion for relief under 362, which is just to compensate for delay. That's all you're asking for under 362. So you couldn't the equity cushion, of course, will compensate for that delay. However, the secured position in the property being laddered down, well, absent any, you know, they used to call it dirt for dirt, right? That's what the Arnold decision said the dirt for dirt plan. There's no dirt here. There's just Hey, look at we have this mythical equity. Lord knows the trees grow in the sky forever. And once the trees grow in the sky forever, your clients going to be adequately protected. I don't think that's what Congress intended. When they were looking at the indubitable equivalent, especially as it manifested itself from the mural decision. What do we do with the fact that the court could not determine a value for this property? I don't think that they wanted to determine the value at that point for two purposes. One is that there was no the burden was on the debtor. As you know, or the section is a permissive section, the court may allow for this. And so once they found that there wasn't any reliance on the insured safety of the principal, I don't believe they needed to get to that the actual appraised amount. And the second point is that this all came out this great financing came out to save the debtor from what from the settlement agreement that the debtor had negotiated. The debtor had to know that there would be consequences a couple years down the line if they couldn't get the financing. Now they're trying to circumvent that settlement agreement by disproportionately dropping our position as a secured creditor in the bankruptcy. We believe that is fundamentally unfair and that the court had decided accurately by weighing the balances of the interest. In addition, the settlement agreement does have a sale component. And that sale component is being done right now. It's being marketed. So the court was very sensitive to the fact that any appraised value that they give that they offer, that appraised value would be used towards negotiating with the marketing and sell of the property today. So what what is what is the I'm sorry, did I interrupt your judgment? I apologize. I was just gonna follow up on what, please. So Resnick just said, and just asked what, at what value is it being marketed? Your Honor, I don't know exactly, but I do know that the price was reduced. Maybe Mr. Daly or Mr. Tillum knows, but I know it's below $30 million. So counsel, what relevance in your view is the declaration of Ms. Hollister that she'd spent three years trying to find a loan with many different brokers. And after all of that effort, most of which didn't come to fruition and were unsuccessful, this was the only loan that she found and the lender would only take a first position? Yeah, that's a, it's a compromised position that most debtors have. To loan to someone in bankruptcy, I imagine that they had the same concerns that the court had just now, which is what's the value? And it's nice to get an appraiser to determine what the value is. But when the court looked at all of the parallels of refinancing other clients in the past, or obtaining financing for other clients in the past, they couldn't determine that this, with all the evidence that was provided, that she did exhaust all her remedies, that she did exhaust all her attempts to get refinancing. And the court doesn't have a bunch of decline. There's no evidence of the declines of the failure to get the financing. There's just evidence of this declaration saying for three years I've attempted to, and unfortunately I have not been able to get it. This is the best that I got. Why don't all of these unknowns, unanswered questions, contingencies, militate in favor of the bankruptcy court having conducted an evidentiary hearing? And in your discussion of that, why don't you also tell me if you disagree with your friend that the evidentiary hearing was on a totally different subject, and so that issue isn't moved? You know, I don't disagree. I think all legal scholars would agree that a sale is the best estimate of a fair market value. And the court did not want to chill that fair market value process while it's being marketed. So the fact that they didn't have an appraisal during the period of time, or didn't come to a final number, I think was balancing the interest. Not only balancing the interest of the debtor, but also balancing the interest of the estate and the other creditors of the estate. Do you agree that the evidentiary hearing issue is not moot? I believe that it is moot. We provided that in our papers, in our reply, mainly because we haven't seen any evidence of an additional collateral. And more importantly, the court didn't necessarily find a value. Again, the court has been sensitive to the marketing efforts to sell this property. So they didn't assign a value. In fact, not only did they not assign a value, they required, as part of our adequate protection, an actual carve-out of our secured lien. Meaning there probably isn't enough equity to incentivize the agent to continue their marketing efforts. And as a result of that, the only adequate protection that they would allow for us is if we accepted the carve-out. We did not accept the carve-out, and that is the issue that is being appealed. It is five minutes, Your Honor, before I... Okay. If none of my colleagues have any more questions for you, we will move to Mr. Daly. Thank you so much, Your Honors. A couple of initial comments on the issue of mootness is even if that $7 million priming loan is still available, the facts have changed. And because what the amounts that the priming loan was supposed to be used for, many of those have increased. And I'll turn the court's attention to page seven of Bob's... No, I'm sorry. Page eight of Bob's opening brief. Bob sets forth a matrix of what that $7 million was supposed to be used for. And many of these have gone up. So, like, senior lien holder would get $400,000. Well, the total payoff amount, because SPS is advanced property taxes and incurred interest, their lien is larger. The church bird's debt that was supposed to be entirely paid off is certainly larger. Deanne Stadt's position is also larger. So, that $7 million would have to be divided up some other way that's not before the court right now. The other issue... Although, if that's your argument as to mootness, it would strike me that the legal issues, in your view, because these things are always going to change over time, are capable of repetition, but would be evading review because the appeal time would always change the numbers. I suppose that might be correct. But as Bob's indicates in their opening brief, there's a question about whether or not this order is even appealable, because it's not a final determination on the merit. But it was certified. Yeah, but she could go get some other loan and bring the same kind of motion tomorrow. It's not a final determination on whether or not she can ever get a priming loan. Maybe true, but this question was certified. Oh, that's true. And then the other thing with respect to mootness is the debtor received a full evidentiary hearing on the motion for relief from automatic stay. And in that, the court said that Bob's wasn't adequately protected even without a priming loan. So if Bob's isn't adequately protected without a priming loan, how would it ever be adequately protected with a priming loan? And then with respect to the issue about whether or not a hearing should have been granted, I focus on the indubitable part of indubitable equivalent found under 11 U.S.C. 364. Maybe it doesn't mean too certain or, I forget the phrase, too evident to be doubted, but it certainly means something. It either means that or it means inarguable, incontestable, incontrovertible. It means very certain. And this property is very unique. It's not a property in a tract development. It's big, but it's very old, and it's not on west side of Los Angeles. So there's literally are no comparables that go along with that. And I think that's shown by the fact that the realtor, first the realtor listed at 39 million, then the realtor dropped it down to 29 million. That's a big swing. And when I was attending some of the appraiser's depositions, one of the appraisers said, the only thing that will it's the type of property that a curator would want to purchase. Somebody that just has some particular affection to this very old property located in Silver Lake. And unlike similar high value properties on the west side where there all are comparables, there's really nothing like this in Silver Lake. So I think the court focusing on too evident to be doubted, how would you ever put a market value on a property that's just so unique using appraisals or comps or anything like that? And I think that's all I have, unless the court has any questions. Mr. Tillum, why don't we give you two minutes? Thank you very much, your honor. Mr. Resnick is correct. This is an equity cushion is not the exclusive means of adequate protection, but it is a means of adequate protection. And that is what the debtor was relying on this in this case. The future consequences issue with all due respect, that's not in the statute. The future consequences of what might happen after this motion is granted or denied is something that can be addressed under a subsequent relief from stay motion. It's not addressed in the connection with this sort of a financing motion under section 364. It is an element under section 362. The argument that was made by Mr. Resnick again, section 361, it's the same words, the same language and the same phrase supposed to be applied in connection with relief from stay, cash collateral and financing motions. You can't have a, well, maybe you can, but I would argue that it would not be appropriate to have the same phrase in the same statute, which is a sort of a helping verb or a helping statute, have different meetings depending on whether it applies to 362, 363 or 364. 361 says very plainly it applies to all of them. Now, Mr. Resnick is also correct in saying that the debtor could and should have contemplated the consequences of not finding financing sooner, but I would respectfully submit that and remind the court the debtor is in the hospitality business. And I don't think anybody anticipated the impact of COVID on the hospitality business. And that deprived her of a period of about a year to go and find replacement financing. We tried to make that argument to the bankruptcy judge and the bankruptcy judge turned a deaf ear to it. He said, you had two years. I don't really care about the COVID, but it shut down the debtor's business. And of course it ruined the debtor's cashflow. Now, another argument or comment that was made is that the property is now being marketed for around 30 million. That's actually incorrect. The property that is being marketed is not the entirety of the property. There are, I believe, four different parcels. And the property that is listed and being marketed currently at 29, but was 39, is only two of the four parcels. I believe that's correct. I know that it's not all four. And in terms of having- Why don't you conclude, Mr. Tillum? Your Honor, I think that I've made all of the points that I can in the briefs, and I appreciate the time that the panel has allowed to me. Thank you very much. All right. We thank counsel for their arguments and the case just argued will be submitted. With that, we are concluded with our argument calendar for the day and the week. And we are adjourned. This court for this session stands adjourned.
judges: Linn, BYBEE, BENNETT